## IRA CHENEY *vs.* THE BOSTON AND MAINE RAIL ROAD COMPANY.

By the rules of a rail road company, the purchasers of tickets for a passage on the road, from one place to another, were required to go through in the same train ; and passengers who were to stop on the road, and afterwards finish their passage in another train, were required to pay more than when they were to go through in the same train : A., not knowing these rules, purchased a ticket for a passage from D. to B. and entered the cars with an intention to stop at E., an intermediate place, and to go to B. in the next train : When he took his ticket, he was informed of the rule that required him to go through in the same train, and a check was given him, on which were the words "good for this trip only :" The conductor of the cars then offered to give back to A. the money which he had paid, deducting the amount of his passage from D. to E., which A. refused to accept, but demanded the ticket in exchange for the check : He stopped at E., went on to B. on the same day, in the next train, and offered his check, which was refused, and he was obliged to pay the price charged for a passage from E. to B., and afterwards brought an action against the company for breach of contract, and for money had and received. *Held,* that the action could not be maintained.

ASSUMPSIT for money had and received, and for breach of a contract by the defendants in not carrying the plaintiff, upon their road, from Durham (N. H.) to Boston. The case was submitted to the court of common pleas, upon the following statement of facts :

" The plaintiff, in May 1844, purchased tickets at the VOL. XI. 11

depot of the defendants' road, at Durham, for a passage for himself and his wife, from Durham to Boston, and paid for said tickets $1·87½ each.    It was and is a rule of the defendants, that passengers purchasing tickets for a passage on said road, from one place to another, must go through in the same train of cars ; but the plaintiff did not know of this rule at the time of purchasing said tickets, and he got into the cars with the intention of stopping, with his wife, at Exeter, between Durham and Boston, and about twelve miles from Durham, and of going on to Boston in the next train.    The plaintiff was informed of the defendants' rule aforesaid when he came to take his tickets, and checks were given him in lieu of the tickets, upon which were the words ' good for this trip only.'    The conductor offered him back the money which he had given for his tickets, deducting the amount of his fare from Durham to Exeter, which the plaintiff refused to accept, but demanded back his tickets in exchange for his checks. Twelve and a half cents less is charged by the defendants for each ticket from Durham to Boston, than for separate tickets from Durham to Exeter, and from Exeter to Boston.    But this fact was not known by the plaintiff.    The plaintiff and his wife stopped at Exeter, and went on to Boston on the same day, in the next train, and he offered his checks, which were refused, and he was obliged to pay $1·50 each for tickets from Exeter to Boston."

The parties agreed that if the plaintiff was entitled to recover, on these facts, judgment should be rendered for him for $20 damages, and costs.    The court of common pleas rendered judgment for the plaintiff, from which the defendants appealed.

*Putnam*, for the plaintiff.

*G. Minot*, for the defendants.

DEWEY, J.    This case involves no question of the general duty of rail road companies to carry passengers who offer themselves and are ready to pay the usual rate of fare.    It is only a question whether one who purchases a ticket, entitling him, by the rules of the company regulating the tariff of fares

to a continuous passage through, and avails himself of the reduction in price allowed to such passengers, can insist upon being taken up as a way passenger, at such stations as he may elect to stop at, he having voluntarily abandoned the train that went through.

The question really is, what was the contract between the plaintiff and defendants. Now the case stated by the parties expressly finds that the price of tickets entitling the party to a passage in the cars from Durham to Boston, in one continuous passage, was $1·87$\frac{1}{2}$ for each, and for a passage from Durham to Exeter, and from Exeter to Boston, as separate trips, $2. Such was the regular and ordinary charge. It is true that the tickets themselves do not describe the passage to be one by the same train. Nor do they purport to entitle the holder to a conveyance by two separate trips, first by taking the cars to Exeter, and thence by a subsequent train passing from Exeter to Boston. They are silent as to the mode. It therefore was a contract to carry in the usual manner in which passengers are carried who have tickets of that kind.

It is said that the rules of the company were unknown to the plaintiff when he purchased the tickets, and therefore he ought not to be affected by them. This might very properly be insisted upon in his behalf, if it were attempted to charge him with any liability created by such rules ; especially if it were attempted to enforce any claim for damages by reason of them.

The question, as to the right of the plaintiff to be transported as a passenger, does not depend upon his knowledge, at the time of the purchase of his ticket, of the difference of the price to be paid for a passage through the whole distance by one train, or that of a passage by different trains. The plaintiff might have inquired and informed himself as to that. If he did not, he took the mode of conveyance, the price of the ticket, and the superscription thereon, secure to him under the rules and regulations of the company. It appears, however, that before reaching Exeter, the plaintiff was fully ap-

prised of the different rates of fare, and the rules applicable to way passengers, and that the agent of the defendants, the conductor of the train, offered to refund to him the money that he had paid for his ticket, deducting the usual fare from Durham to Exeter, which the plaintiff refused to accept. In the opinion of the court, this was all that the defendants were required to do ; and as the plaintiff declined this offer, and thereupon left the train, stopping at Exeter, he voluntarily relinquished his passage through by a continuous train, for which he held a ticket, and whatever loss he has sustained was occasioned by his own act, and occurred under such circumstances as preclude him from all claim for damages for any default in the company in the matter. Nor can he sustain any legal claim to recover back the sum paid for his first ticket, or any part thereof. The offer to that effect was refused by him.

*Judgment for the defendants.*